**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Apr 04 2014, 10:07 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**WILLIAM J. KAISER**
**MARGARET M. CHRISTENSEN**
Bingham Greenebaum Doll, LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEES:

**MICHAEL H. HAGEDORN**
Tell City, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN RE: THE GRANDPARENT VISITATION OF ) 
C. S. N.: )
 )
BROOKE NEUHOFF, )
 )
    Appellant-Respondent, )
 )
        vs. )    No. 19A05-1311-MI-542
 )
SCOTT A. UBELHOR and )
ANGELA S. UBELHOR, )
 )
    Appellees-Petitioners. )

APPEAL FROM THE DUBOIS CIRCUIT COURT
The Honorable William E. Weikert, Judge
Cause No. 19C01-1302-MI-117

**April 4, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

Appellant-Respondent, Brooke Neuhoff (Mother), appeals the trial court's Order awarding visitation with Mother's minor child to the paternal grandparents, Appellees-Petitioners, Scott A. Ubelhor (Grandfather) and Angela S. Ubelhor (Grandmother) (collectively, Grandparents).

We remand with instructions. Stay of grandparent visitation is ordered and jurisdiction is retained.

## ISSUE

Mother raises one issue on appeal, which we restate as the following: Whether the trial court erred in granting Grandparents' Petition for Grandparent Visitation.

## FACTS AND PROCEDURAL HISTORY

During her junior year of high school, Mother learned that she and her nineteen-year-old boyfriend, Justin Ubelhor (Father), were expecting a baby. Just eleven weeks before Mother gave birth, Father committed suicide. On June 8, 2010, by agreement between Mother and Grandparents, the trial court entered an order establishing Father's paternity, and on June 17, 2010, Mother gave birth to a son, C.N. (the Child). Because Mother was only seventeen years old when the Child was born, her parents (Maternal Grandparents) were appointed as the Child's guardians.[1] Mother and the Child live in Maternal Grandparents' home in Huntingburg, Indiana.

---

[1] The trial court noted in its findings that Maternal Grandparents' guardianship over the Child was terminated on August 20, 2013, at which point Mother became "solely responsible for [the Child's] person and property." (Appellant's App. p. 6).

In August of 2010, Mother returned to school for her senior year, and the Child was enrolled in daycare. Mother continued her participation in extracurricular activities and graduated from high school with a grade point average of 3.9 on a 4.0 scale. Thereafter, she enrolled in the University of Southern Indiana to study accounting. In addition to being a full-time college student, Mother works for the accounting department of a large remanufacturing company.

Following Father's death, Mother maintained a close relationship with Grandparents. Grandmother hosted a baby shower for Mother, and she was present during the Child's delivery. For nearly the first three years of the Child's life, Mother made sure Grandparents were involved in the Child's baptism, birthday parties, holidays, and other celebrations. Likewise, Grandparents invited Mother to attend their family events. In addition to the special occasions, Mother took the Child for visits at Grandparents' house nearly every Sunday. Although Mother stayed with the Child during the first few months of his life, as he became older, she would sometimes leave for several hours so that she could go do homework, and Grandparents could enjoy their own time with the Child. The Child never spent the night with Grandparents.

Sometime in January of 2013, Grandmother heard a rumor that Mother intended to terminate Grandparents' contact with the Child because Mother believed that Grandparents "were low-life people[]" and "bad influences" who did not "deserve to be around [the Child]." (Transcript p. 16). When confronted by Grandmother, Mother denied ever making such statements and informed Grandmother that she "would never do that to [Grandparents]." (Tr. p. 16). Unwilling to risk the chance that Mother might keep the

3

Child away from them, and because they wanted to have overnight visits with the Child, Grandparents filed a Petition for Grandparent Visitation on February 22, 2013. For the next several weeks, despite Grandparents' legal action, Mother continued to take the Child for his Sunday visits with Grandparents.

Around this same time, Mother began to notice changes in the Child's behavior following his visits with Grandparents, specifically that the Child was crying more, acting out, and being aggressive. The Child's last visit with Grandparents occurred on Sunday, March 17, 2013. When Mother picked the Child up from Grandparents' house that afternoon, she became concerned by the Child's atypical behavior. Mother explained that the Child

> was crying and hitting and just terrified. . . . He cried for an hour and a half straight. He wanted no one to touch him [and] [w]anted nothing to do with anyone else. And then I . . . I started praying, and finally, he came up, and he said, mama, hold me. And he was shaking and shivering and just seemed really scared.

(Tr. pp. 67-68 (last alteration in original)). The next day, the Child had multiple potty-training accidents at daycare, which was also highly unusual for him, and that night, Mother noticed that the Child had several bruises on his back. At this point, Mother decided to discontinue the Child's visitation with Grandparents. As a result, on April 12, 2013, Grandparents filed an Emergency Petition for Grandparent Visitation, alleging that Mother had retaliated against their Petition for Visitation by denying them "all contact with [the Child] despite a previous parenting time routine and relationship prior to the filing of this case." (Appellant's App. p. 14). The trial court denied Grandparents' Emergency Petition.

4

On August 15, 2013, the trial court conducted an evidentiary hearing on Grandparents' Petition for Visitation. On October 8, 2013, the trial court issued its Order granting visitation rights to Grandparents. In its findings of fact and conclusions of law, the trial court concluded that "[i]t is in [the Child's] best interest that he visit with [Grandparents]." (Appellant's App. p. 9). The trial court specified that, following a six-week transition period consisting of both supervised and unsupervised visits, Grandparents are entitled to unsupervised visitation time with the Child on alternating Sundays from 10:00AM to 6:00PM. On November 9, 2013, Mother filed a motion to stay the visitation Order pending the outcome on appeal, which the trial court denied on December 10, 2013.

Mother now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Standard of Review*

When a trial court enters a decree either granting or denying grandparent visitation, it is required to issue findings of fact and conclusions of law. Ind. Code § 31-17-5-6. Thus, we apply the two-tiered standard of review set forth in Indiana Rule of Trial Procedure 52(A). Our court "shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). First, we must determine whether the evidence supports the findings and, second, whether the findings support the judgment. *In re Visitation of M.L.B.*, 983 N.E.2d 583, 585 (Ind. 2013). We will find clear error where "there is no evidence supporting the findings or the findings fail to support the judgment." *K.I. ex rel. J.I. v. J.H.*, 903 N.E.2d 453, 457 (Ind. 2009). A judgment will also be found

5

clearly erroneous if "the trial court applies the wrong legal standard to properly found facts." *In re Visitation of M.L.B.*, 983 N.E.2d at 585.

## II. *Grandparent Visitation Act*

### A. *Competing Interests*

Mother claims that the trial court erred in granting Grandparents' petition for visitation. It is well-established that the Fourteenth Amendment protects the fundamental liberty interest of parents to direct the care, custody, and control of their children. *Troxel v. Granville*, 530 U.S. 57, 65 (2000). As such, grandparents have historically "had no special common-law right to have visitation with a grandchild." *In re Visitation of M.L.B.*, 983 N.E.2d at 585. Nevertheless, in recognizing that it may be in a child's best interests to have a relationship with his or her grandparents, the Indiana General Assembly enacted the Grandparent Visitation Act, which balances "the rights of the parents to raise their children as they see fit and the rights of grandparents to participate in the lives of their grandchildren." *Swartz v. Swartz*, 720 N.E.2d 1219, 1222 (Ind. Ct. App. 1999).

The Grandparent Visitation Act provides that a grandparent may pursue visitation rights only if (1) a child's parent is deceased; (2) a child's parents are divorced; (3) or if a child was born out of wedlock and the father has established paternity. I.C. § 31-17-5-1(a)-(b). In determining whether to grant visitation rights, a trial court must find that visitation would be in the best interests of the child. I.C. § 31-17-5-2(a). In addition to the other factors affecting a child's best interests, a trial court "may consider whether a grandparent has had or has attempted to have meaningful contact with the child." I.C. § 31-17-5-2(b).

The Grandparent Visitation Act provides the mechanism for grandparents to secure visitation rights, but in determining whether to actually grant such a request, the trial court is constrained by the presumption that fit parents make decisions in their children's best interests.

> [S]o long as a parent adequately cares for his or her children (*i.e.*, is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children.

*Troxel*, 530 U.S. at 68-69. Following the United States Supreme Court's holding in *Troxel*, 530 U.S. at 75, that the grandparent visitation order at issue "violated [a mother's] due process right to make decisions concerning the care, custody, and control of her daughters[,]" our court enumerated the factors a trial court should consider in issuing a grandparent visitation order. *See McCune v. Frey*, 783 N.E.2d 752, 757 (Ind. Ct. App. 2003). The "trial court must address" the following "*McCune* Factors" in its factual findings and legal conclusions:

> (1) the presumption that a fit parent acts in his or her child's best interests;
> (2) the special weight that must be given to a fit parent's decision to deny or limit visitation;
> (3) whether the grandparent has established that visitation is in the child's best interests; and
> (4) whether the parent has denied visitation or has simply limited visitation.

*K.I. ex rel. J.I.*, 903 N.E.2d at 462.

B. *Application of the McCune Factors*

In the present case, Mother contends that the trial court failed to fully address the *McCune* Factors in its findings of fact and conclusions of law. Conversely, Grandparents assert that the trial court issued "sufficient findings of fact for the parties and reviewing

7

court to determine the theory on which the trial court entered judgment." (Appellee's Br. p. 11). Our supreme court has explained that a grandparent visitation order is constitutionally defective if the factual findings fail to reflect a consideration of all four *McCune* Factors. *In re Visitation of M.L.B.*, 983 N.E.2d at 586-87. "The first[, second, and fourth] required factors implement the constitutionally protected right of fit parents to make child rearing decisions, and reflect the significant burden of proof grandparents must carry to override those decisions." *Id.* at 587. Because it is insufficient "to merely recite [the *McCune*] [F]actors[] unless there is also analysis of how the evidence as weighed by the trial court fits within that framework[,]" we find that the trial court failed to properly consider these three *McCune* Factors. *Id.* at 589.

With respect to the first *McCune* Factor, the trial court found "no evidence that [Mother] has abused or neglected [the Child] in any manner, and the evidence presented established that Mother is a fit parent." (Appellant's App. p. 7). To this end, the trial court also noted Mother's achievements in school, that she has maintained employment, and that she "does not have any criminal convictions, testified that she has never used illegal substances, and raises [the Child] in a Christian environment." (Appellant's App. p. 6). However, there is nothing else in the trial court's findings or conclusions to either expressly or implicitly suggest its acknowledgement of the presumption that Mother, as a fit parent, acted in the Child's best interests. This presumption places the burden of proof on Grandparents to establish that Mother did not act in accordance with the Child's best interests. *Ramsey v. Ramsey*, 863 N.E.2d 1232, 1239 (Ind. Ct. App. 2007). In its factual findings, the trial court noted its obligation to address the *McCune* Factors, but there are

no other findings that apprise the reviewing court that the trial court actually found that Grandparents overcame this presumption. *See id.*

Proceeding to the second *McCune* Factor, we find no indication that the trial court accorded any weight, let alone "special weight," to Mother's decision to suspend the Child's visits with Grandparents. The trial court noted its finding that there was no evidence that the Child would be unsafe or otherwise harmed by Grandparent visitation, but it did not address the reasons Mother proffered for discontinuing the Sunday visits. Our review of the record reveals that Mother cited numerous concerns regarding the length of the Child's visits with Grandparents and her apprehension about allowing the Child to stay overnights in their home, including the Child's unusual behavior and his napping schedule; exhibitions of hostility by both Grandparents in front of Mother and the Child; Grandfather's prior convictions for drugs and domestic violence against Grandmother; and that other individuals, strange to the Child, have resided with Grandparents at different times. While some of these issues may warrant less weight than others based on their earlier dates of occurrence, it does not appear that the trial court even took Mother's decision into account; nor did the trial court explain how any other evidence was sufficient to overcome the weight of Mother's parental decision-making authority.

The findings must also reflect that the trial court gave "some weight" to the fourth *McCune* Factor—that is, whether Mother had denied visitation entirely or merely limited it. *In re Visitation of M.L.B.*, 983 N.E.2d at 586.

> If visitation has been denied unreasonably, then the stakes are whether the child will have *any* relationship with the grandparents, which may strengthen the case for judicial intervention. But when a parent has already offered

9

visitation voluntarily, albeit within reasonable limits, it is not the existence of a relationship at stake, but only *on whose terms* it will be. In that event, a grandparent-visitation order particularly implicates the danger of "infring[ing] on the fundamental right of parents to make child rearing decisions simply because [a court] believes a 'better' decision could be made."

*Id.* at 587 (alterations in original) (citations omitted). The trial court's sole finding or conclusion pertaining to this factor provides that Grandparents "have played an important role in [the Child's] life, as the paternal grandparents, until recently when they were no longer allowed to do so." (Appellant's App. p. 9).

The record is replete with evidence of the Grandparents' visitation history with the Child. For the first three years of Child's life, Mother endeavored to foster a close relationship between the Child and Grandparents by including them in all of the Child's special moments and by driving the Child to their house nearly every Sunday. Grandparents do not dispute that they filed the Petition for Visitation despite the fact that Mother never threatened to terminate their contact with the Child. In fact, Grandparents testified that they filed the Petition for Visitation, at least in part, to secure overnight visits with the Child. Furthermore, Mother continued to facilitate the visitation between the Child and Grandparents for several weeks following the Petition and only stopped them after the Child demonstrated highly unusual behavior following a visit. *See In re Visitation of M.L.B.*, 983 N.E.2d at 587 (noting that mother's recent denial, as well as the parties' earlier pattern of visitation, are both relevant considerations). While Mother expressed her preference that Grandparents not be able to dictate the length of the visits and that there should be a period of supervised visitation due to the Child's odd behavior, there is no

evidence that Mother desired to prevent the Child from having a relationship with Grandparents. Once again, however, the inadequate findings and conclusions do not permit us to ascertain whether the trial court conferred some weight to Mother's decision.

The bulk of the trial court's findings concern the third *McCune* Factor—the Child's best interests. The trial court made numerous findings in support of its conclusion that the Child's best interests are served by awarding visitation with Grandparents. In addition to its conclusion that Grandparents have had meaningful contact with the Child throughout his life, the trial court relied on the guardian *ad litem*'s report that the Child is very bonded to Grandparents and "that [Grandparents] are [the Child's] link to his [F]ather." (Appellant's App. p. 7). In its decision, the trial court accepted the opinion of Mother's counselor that Grandparents might benefit from some parenting classes and that overnight visits are inappropriate given the Child's young age. Accordingly, we conclude that the trial court's findings adequately address the best interests *McCune* Factor.

Because the trial court failed to make adequate findings for three of the four *McCune* Factors, the trial court's Order violates "Mother's fundamental right to direct [the Child's] upbringing." *In re Visitation of M.L.B.*, 983 N.E.2d 583 at 588. As our supreme court has established, however, such a defective order is not automatically rendered void. Rather, the Order is *voidable*. Therefore, we order the trial court to issue new findings and conclusions revealing its consideration of all four *McCune* Factors without a new hearing

within thirty days from the date of this opinion.[2]  This court will retain jurisdiction to review the trial court's new findings and conclusions.  Pending our review, we suspend grandparent visitation.

CONCLUSION

Based on the foregoing, we conclude that the trial court erred by failing to address all of the necessary factors in its Order awarding visitation to Grandparents.

Remanded with instructions.  Stay of grandparent visitation is ordered and jurisdiction is retained.

VAIDIK, C. J. and MAY, J. concur

---

[2]  Because we conclude that the trial court's Order is defective, we do not address Mother's remaining argument that there is insufficient evidence to overcome the presumption that Mother acted in the Child's best interests.