# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 15 2016, 8:29 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Nicholas J. Hursh
Shambaugh, Kast, Beck & Williams, LLP
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE

Thomas L. Stucky
Connelly, Stucky, Lauer & Young LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re: The Grandparent Visitation of Jean Allen: | September 15, 2016 |
| | Court of Appeals Case No. 02A03-1512-MI-2346 |
| Andrew Lemke and Satarah Lemke,[1] | Appeal from the Allen Superior Court |
| *Appellants-Respondents,* | The Honorable Charles F. Pratt, Judge |
| v. | The Honorable Sherry A. Hartzler, Magistrate |
| Jean Allen, | Trial Court Cause No. 02D08-1504-MI-413 |
| *Appellee-Petitioner.* | |

---

[1] We note that Satarah Lemke does not participate in the instant appeal. However, a party below is a party on appeal. *See* Ind. Appellate Rule 17.

**Bradford, Judge.**

# Case Summary

[1] Appellant-Respondent Andrew Lemke ("Father") appeals the trial court's order granting Appellee-Petitioner Jean Allen's ("Grandmother") request for grandparent visitation of Father's two minor children. On appeal, Father contends that the trial court erred in granting Grandmother's request for grandparent visitation. Father also contends that the trial court abused its discretion in ordering that he pay certain attorney's fees. Upon review, we conclude that the trial court did not err in granting Grandmother's request for grandparent visitation or abuse its discretion in awarding Mother's request for attorney's fees. However, we are concerned that the amount of visitation ordered exceeds the amount of visitation contemplated by the Grandparent Visitation Act. As such, we affirm in part, reverse in part, and remand to the trial court with instructions.

# Facts and Procedural History

[2] Father and Satarah Lemke ("Mother") are the divorced parents of two children: S-J.L. and K.L. (collectively, "the Children"). After his and Mother's divorce, Father remarried, Sarah Sanger-Lemke ("Step-Mother"). Step-Mother has two biological children, Lu.S. and Li.S. Grandmother is Father's biological mother.

[3] Although the parties dispute the frequency of prior contacts between the Children and Grandmother, the parties agree that Grandmother has enjoyed a

relationship with the Children since their births. On February 23, 2015, Grandmother and Grandmother's husband took S-J.L., K.L., Lu.S., and Li.S. for ice cream. While eating ice cream, S-J.L. grabbed a hold of Li.S.'s chair, causing Li.S. to fall. Li.S. responded by standing up and slapping S-J.L. Grandmother reacted to S-J.L.'s and Li.S.'s actions by grabbing a hold of Li.S. and slapping the side of Li.S.'s face. Li.S. and S-J.L. were both upset when Grandmother took them home a short time later. Step-Mother noticed that upon arriving home, Li.S.'s nose was bleeding and she had a mark depicting three fingerprints across her cheek. The mark remained on Li.S.'s face after she showered later that evening. In addition, when Father got home even later that evening, he observed that Li.S., who was already in bed, still had a Kleenex in her nose.

[4] After checking on Li.S., Father called Grandmother. During this conversation, Grandmother confirmed that she had slapped Li.S. Father requested that Grandmother not slap any of his children or step-children. Father also requested that Grandmother refrain from discussing adult topics with any of the children.

[5] The following day, on February 24, 2015, Grandmother went to Father's home. Grandmother and Father talked for approximately forty-five minutes to an hour. Despite a request from Father that she do so, Grandmother did not apologize to either Father, Step-Mother, or Li.S. at this time. Grandmother responded to Father's request by indicating that she would "do it again if necessary." Tr. p. 85. Since February 24, 2015, Father has spoken with

Grandmother and her husband on numerous occasions. On at least some of these occasions, Grandmother has made requests to see the Children.

[6] On March 10, 2015, the Department of Child Services ("DCS") initiated an investigation of Father as an alleged perpetrator of child abuse and/or neglect. As part of the investigation, Father, Step-Mother, and the DCS case manager assigned to the case agreed to the following safety plan: "We will restrict [Grandmother's] access to the children.[2] We will make sure the children are supervised at all times." Respondent's Ex. B. Although she initially claimed to have contacted DCS because of concern regarding potentially violent actions allegedly committed by Li.S., Grandmother subsequently admitted that she contacted DCS and made allegations of abuse and/or neglect because Father would not allow her to talk to the Children.

[7] On April 24, 2015, Grandmother filed a verified petition seeking grandparent visitation. In this petition, she claimed that she had enjoyed a close relationship with the Children, that her ability to continue such a relationship was being restricted, and that it was in the Children's best interest for the close relationship to continue. Father and Mother (collectively, "Parents") filed a joint motion in opposition of Grandmother's petition. Parents also jointly sought the dismissal of Grandmother's petition and requested attorney's fees. Grandmother soon thereafter requested that a guardian ad litem ("GAL") be

---

[2] It appears that in this instance, the words "the children" refers to all four children, not just S-J.L. and K.L.

appointed to represent the Children's best interests. The trial court granted this request and appointed Suzan Rutz as GAL.

[8] The trial court subsequently conducted a two-day evidentiary hearing during which it heard evidence relating to Grandmother's petition. The trial court took the matter under advisement at the end of the two-day evidentiary hearing. On December 18, 2015, the trial court issued an order in which it granted Grandmother's request for grandparent visitation. The trial court also granted Mother's request for attorney's fees. This appeal follows.

# Discussion and Decision

[9] Father contends that the trial court erred in granting Grandmother's petition for visitation with the Children, arguing that the trial court's order was clearly erroneous. Father also contends that the trial court erred in ordering him to pay a portion of Mother's attorney's fees. We will discuss each in turn.

## I. Whether the Trial Court Erred in Granting Grandmother's Petition for Grandparent Visitation

### A. Standard of Review

[10] "Because the Grandparent Visitation Act requires specific findings of fact and conclusions of law, Ind. Code § 31-17-5-6, we apply the two-tiered Indiana Trial Rule 52 standard of review." *In re Visitation of M.L.B.*, 983 N.E.2d 583, 585 (Ind. 2013) (citing *Megyese v. Woods*, 808 N.E.2d 1208, 1213 (Ind. Ct. App. 2004)). "We first determine whether the evidence supports the findings, and

then whether the findings support the judgment." *Id*. (citing *In re K.I.*, 903 N.E.2d 453, 457 (Ind. 2009)). "We set aside findings of fact only if they are clearly erroneous, deferring to the trial court's superior opportunity to judge the credibility of the witnesses." *Id*. (citing *K.I.*, 903 N.E.2d at 457 (internal quotations omitted)). "In turn, '[a] judgment is clearly erroneous when … the findings fail to support the judgment,' or 'when the trial court applies the wrong legal standard to properly found facts.'" *Id*. (quoting *K.I.*, 903 N.E.2d at 457 (internal citations omitted)).

## B. The Grandparent Visitation Act

[11] The Indiana Supreme Court set forth an insightful overview of the law relating to grandparent visitation in *In re Visitation of M.L.B.*, stating the following:

> Historically, grandparents had no special common-law right to have visitation with a grandchild. To the extent they could seek court-ordered visitation, it was under the same standard applicable to any unrelated third party: by showing that they had "acted in a custodial and parental capacity," so that the child would be harmed by loss of that relationship. *See, e.g., Collins v. Gilbreath*, 403 N.E.2d 921, 923-24 (Ind. Ct. App. 1980) (affirming visitation award to a step-father on that basis). Even under that narrow standard, *Collins* cautioned that it did not "intend to open the door and permit the granting of visitation rights to … myriad … unrelated third persons, including grandparents, who happen to feel affection for a child," believing that such a new policy should be adopted "in a legislative, not judicial, forum." *Id*. at 923-24 & n. 1.
>
> Not until 1981 did an Indiana court recognize any limited right to grandparent visitation. *See Krieg v. Glassburn*, 419 N.E.2d 1015, 1018-19 (Ind. Ct. App. 1981) (construing Indiana Trial

Rule 24(A)(2) to allow grandparents to intervene of right in post-dissolution custody and stepparent adoption proceedings and petition for visitation). The very next year, the Legislature superseded *Krieg* by passing Indiana's first Grandparent's Visitation Statute. Ind. Code § 31-1-11.7-1 to 8 (1982). The statute then became the exclusive basis for a grandparent to seek visitation, and was available only if (1) the child's father or mother was deceased or (2) the child's parents had divorced. *In re Visitation of J.O.*, 441 N.E.2d 991, 995 (Ind. Ct. App. 1982). Apart from a 1989 amendment expanding the statute to include grandparents of children born out of wedlock, the substance of the statute has remained largely unchanged, even through its 1997 recodification to its current location at Indiana Code 31-17-5.

In the same time frame, many other states also created statutory grandparent-visitation rights, affording varying degrees of deference to natural parents' decisions about grandparent involvement. Ultimately, in *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), the Supreme Court of the United States addressed the tension between those emerging rights and the fundamental right of fit parents to direct their children's upbringing. *Troxel* acknowledged that because "grandparents and other relatives undertake duties of a parental nature in many households," children's relationships with grandparents may deserve protection. 530 U.S. at 64, 120 S.Ct. 2054. Nevertheless, *Troxel* broadly agreed that natural parents have a fundamental constitutional right to direct their children's upbringing without undue governmental interference, and that a child's best interests do not necessarily override that parental right.

In striking a balance between parental rights and children's interests, the *Troxel* plurality discussed several key principles, *see* 530 U.S. at 69-71, 120 S.Ct. 2054, which our Court of Appeals soon distilled into four factors that a grandparent-visitation order

"should address":

> (1) a presumption that a fit parent's decision about grandparent visitation is in the child's best interests (thus placing the burden of proof on the petitioning grandparents);

> (2) the "special weight" that must therefore be given to a fit parent's decision regarding nonparental visitation (thus establishing a heightened standard of proof by which a grandparent must rebut the presumption);

> (3) "some weight" given to whether a parent has agreed to some visitation or denied it entirely (since a denial means the very existence of a child-grandparent relationship is at stake, while the question otherwise is merely how much visitation is appropriate); and

> (4) whether the petitioning grandparent has established that visitation is in the child's best interests.

*McCune v. Frey*, 783 N.E.2d 752, 757-59 (Ind.Ct.App.2003), citing *Crafton v. Gibson*, 752 N.E.2d 78, 96-98 (Ind. Ct. App. 2001). Subsequent Court of Appeals decisions followed suit. *E.g., In re Guardianship of J.E.M.*, 870 N.E.2d 517, 520 (Ind. Ct. App. 2007), and *In re Paternity of P.E.M.*, 818 N.E.2d 32, 37 (Ind. Ct. App. 2004).

Then in *K.I.*, this Court approved of the four *McCune* factors, and took the additional step of declaring that a grandparent-visitation order "*must* address" those factors in its findings and conclusions. 903 N.E.2d at 462 (emphasis added [*in In re M.L.B.*]). In connection with that requirement, we further explained that the "Grandparent Visitation Act contemplates only occasional,

temporary visitation that does not substantially infringe on a parent's fundamental right to control the upbringing, education, and religious training of their children." *Id.* (internal quotations and citations omitted).

983 N.E.2d at 585-86.

# C. Analysis

[12] Following a hearing on Grandmother's request for visitation, the trial court concluded as follows:

> 31. The Court concludes that the decision to deny grandparent visitation by [Parents], who are although a [sic] fit parents, was not a fit decision made with the best interests of the children in mind.
>
> 32. In this matter, the decision to deny grandparent visitation, in the case of [Father], is because [Grandmother] did not apologize, participate in counseling, or pay his attorney fees. [Father] testified that other than these demands, he did not have an objection to [Grandmother] having visitation. The Court in *K.L.*, stated that just because special weight [is] given to a parent's decision, it does not mean that the court does not need to "take at face value any explanation given by a parent.["] *K.L. v. E.H.*, 6 N.E.3d 1021 (Ind. Ct. App. 2014). The Court shall listen to the evidence and make its own determination as to whether the "parent's alleged justification for denying or restricting visitation with grandparents holds water." *Id.* at 1032.
>
> 33. The Court concludes that [Parents] who are otherwise fit parents, have made an "unfit decision" to deny or limit the grandparent visitation. The Court concludes that the need for counseling for the [C]hildren has been created in part by [Father]'s conduct during and prior to the filing of this action.

Therefore, he does not have clean hands to claim that his decision that [Grandmother] participate in counseling is a fit decision to deny her contact and is in the best interests of the [C]hildren. The Court further concludes that the demand for the payment of his attorney fees by [Grandmother] and the demand for an apology to a child not involved in these proceedings is a not fit decision in the best interests of the [C]hildren given the decline of [the Children]'s well-being.

34.     The Court ultimately concludes that [Mother] is not otherwise opposed to the granting of grandparent visitation so long as it does not infringe upon her time with the [C]hildren.

35.     The Court concludes that the limitation and denial of grandparent visitation has adversely impacted the [C]hildren. The Court concludes that considering that neither parent has established that their decision is borne out of safety, protection, or infringement upon their fundamental right to direct their children's upbringing, the Court concludes that [Grandmother] has rebutted the presumption that [Parents'] decision to deny or limit grandparent visitation is in the best interests of the [C]hildren.

36.     Although the amount of visitation is left to the sound discretion of the trial court, the Grandparent Visitation Act contemplates only occasional, temporary visitation that does not substantially infringe on a parent's fundamental right to control the upbringing, education, and religious training of [his or her] children.[ ] *Visitation of M.L.B.*, 983 N.E.2d at 586, quoting, *K.I.*, 903 N.E.2d at 462, see also, [*Sightes v. Barker*, 684 N.E.2d 224, 230 (Ind. Ct. App. 1997)] (stating that the Grandparent Visitation Act only contemplates "occasional, temporary visitation"); [*Swartz v. Swartz*, 720 N.E.2d 1219, 1222-23 (Ind. Ct. App. 1999)] (finding an abuse of discretion where grandparent visitation was akin to that awarded to a non-custodial parent).

Appellant's App. pp. 37-38. The trial court further concluded that grandparent visitation was in the best interest of the Children. In granting Grandmother's request for visitation, the trial court ordered that Grandmother (1) participate in counseling with the Children at the direction of the Children's therapist and (2) refrain from physical discipline or corporal punishment of the Children at all times. The trial court stated that Grandmother shall be permitted unsupervised visitation with the Children "as the parties agree." Appellant's App. p. 38. The trial court also set forth a visitation schedule which would apply in the event that the parties were unable to agree to visitation without court interference.

### 1. Grandmother's Request for Grandparent Visitation

[13]     It is undisputed that on February 23, 2015, Grandmother grabbed ahold of Li.S. and slapped her across the face. Grandmother does not dispute Step-Mother's claim that as a result of the slap, Li.S. suffered from a bloody nose and had a mark depicting three fingerprints on her cheek. It is also undisputed that Father began limiting Grandmother's access to the Children after Grandmother refused to apologize for slapping Li.S. Following a two-day evidentiary hearing, the trial court determined that while Father was an otherwise fit parent, his decision to limit Grandmother's access to the Children amounted to an unfit decision.

[14]     In challenging the trial court's conclusion that he made an unfit decision in limiting Grandmother's access to the Children, Father argues that not only did Grandmother slap Li.S. across the face with enough force to cause the above-mentioned injuries, she also indicated that she would "do it again if necessary."

Tr. p. 85. While we acknowledge that Grandmother has previously indicated that she would potentially use corporal punishment in the future, we do not believe that there is any remaining potential risk that Grandmother would resort to corporal punishment in the future as she has since been ordered by the trial court to refrain from any form of physical discipline or corporal punishment. The trial court has also ordered Grandmother to participate in counseling at the direction of the Children's therapist. Further, while Father argues that he was simply acting in accordance with the safety plan that he entered with DCS on March 10, 2015, wherein he agreed to limit Grandmother's access to the Children, we observe that the DCS case manager testified that Father was not obligated to follow the terms of this agreement because, at least in this case, compliance was voluntary. The trial court credited this testimony, finding that Father was not required to abide by the terms of the agreement.

[15] Given the trial court's orders that Grandmother refrain from any form of physical discipline or corporal punishment in the future and that Grandmother participate in counseling coupled with the DCS case manager's testimony and the trial court's finding that compliance with the March 10, 2015 safety plan was voluntary, we cannot say that the trial court's conclusion that Father's decision to limit Grandmother's access to the Children constituted an unfit decision was not supported by the facts and circumstances of this case. This is especially so given the evidence indicating that the Children wish to have a relationship with Grandmother that is similar to that which they enjoyed prior

to February 23, 2015; that Mother does not oppose the Children having a continued relationship with their Grandmother; and that Father has indicated that had Grandmother apologized for slapping Li.S. and engaged in counseling, he would have no concerns about the Children having an ongoing relationship with Grandmother similar to that which they enjoyed prior to February 23, 2015.

[16] Further, while we acknowledge that "special weight" must "be given to a fit parent's decision regarding nonparental visitation," establishing a "heightened standard of proof by which a grandparent must rebut the presumption," *In re Visitation of M.L.B.*, 983 N.E.2d at 586, we conclude that Grandmother met said heightened burden in this case. The record demonstrates that Grandmother and the Children have long enjoyed a loving relationship, were accustomed to spending a significant amount of time together, and would like to spend more time together in the future. While Father has not completely barred Grandmother from communicating with the Children, it is clear that he has significantly limited Grandmother's access to the Children. The trial court found that the Children have suffered as a result of Father's decision to limit their interactions with Grandmother.

### 2. *Amount of Visitation Awarded*

[17] The trial court ordered that Grandmother "shall be permitted unsupervised visitation [with the Children] *as the parties agree*." Appellant's App. p. 38 (emphasis added). However, the trial court further ordered that, if the parties

could not agree on visitation, Grandmother should be granted visitation as follows:

>    i.   During [Father's] portion of the winter break, [Grandmother] shall be granted six (6) hours visitation with the [C]hildren on a day that is not a religious holiday historically celebrated by [Father].
>
>    ii.   [Grandmother] shall be granted one mid-week visitation per month with the [C]hildren in place of one of [Father's] mid-week parenting time events for that month.
>
>    iii.   [Grandmother] shall be granted one mid-week visitation for four (4) hours with the [C]hildren on the week following their birthday.  This shall occur in place of one of [Father's] mid-week parenting time events for that month and shall be in addition to [Grandmother's] regular mid-week visitation as set forth above.
>
>    iv.   [Grandmother] shall be granted reasonable phone contact with the [C]hildren and shall be permitted to communicate by email, cards, and/or letters.
>
>    v.   [Parents] shall provide [Grandmother] with at least forty-eight (48) hours notice of all extracurricular activities or religious events of the [C]hildren and shall not limit her attendance.
>
>    vi.   For all grandparent visitation, the parties shall abide by the applicable terms of Section I, General Rules Applicable to Parenting Time.  [Grandmother] shall be responsible for all transportation associated with her grandparent visitation.

Appellant's App. pp. 38-39.

[18]   Again, the Indiana Supreme Court has held that the "'Grandparent Visitation Act contemplates only occasional, temporary visitation that does not

substantially infringe on a parent's fundamental right to control the upbringing, education, and religious training of their children.'" *In re Visitation of M.L.B.*, 983 N.E.2d at 586 (quoting *K.I.*, 903 N.E.2d at 462). In this case, it seems that the amount of visitation ordered by the trial court includes more than merely occasional visitation. The trial court's order recognizes that Father is a non-custodial parent who has been awarded parenting time with the Children. While the trial court's order does not state the extent of Father's awarded parenting time, it seems likely that the amount of visitation ordered would significantly infringe upon Father's parenting time with the Children. As such, we conclude that the amount of awarded visitation should be reconsidered. Thus, on remand, we instruct the trial court to craft a visitation schedule which more closely reflects the *occasional* visitation contemplated under the Grandparent Visitation Act.

## II. Whether the Trial Court Erred in Ordering Father to Pay a Portion of Mother's Attorney's Fees

### A. Standard of Review

[19] Father also contends that the trial court abused its discretion in ordering that he pay a portion of Mother's attorney's fees. "The decision to award attorney's fees and the amount of the award are reviewed for an abuse of discretion." *Mitchell v. Mitchell*, 695 N.E.2d 920, 924 (Ind. 1998). An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Poppe v. Jabaay*, 804 N.E.2d 789, 793 (Ind.

Ct. App. 2004), *trans. denied*. "An abuse of discretion also occurs when the trial court has misinterpreted the law or disregards evidence of factors listed in the controlling statute." *Id*. In Indiana, parties are generally responsible for the payment of their own attorney's fees. *Salcedo v. Toepp*, 696 N.E.2d 426, 435 (Ind. Ct. App. 1998). However, Indiana Code section 34-52-1-1 provides that a party may be entitled to an award of attorney's fees if the other party brought an action that was frivolous, unreasonable, or groundless.

## B. Analysis

[20] Here, Grandmother filed the underlying lawsuit seeking grandparent visitation. Mother and Father filed a joint motion for attorney's fees, arguing that the Grandmother's lawsuit was frivolous, unreasonable, entirely groundless, and being conducted in bad faith. The trial court granted the motion with respect to Mother, but not with respect to Father. In granting Mother's request for attorney's fees, the trial court concluded as follows:

> The Court orders that the parties shall equally share in [Mother]'s attorney fees. [Father] is ordered to pay One Thousand Two Hundred and Eighty•Nine dollars ($1,289.00) within forty-five (45) days to [Mother]'s counsel, Katherine Ridenour. The Court further orders that [Grandmother] pay One Thousand Two Hundred and Eighty-Nine dollars ($1,289.00) within forty-five (45) days to [Mother]'s counsel, Katherine Ridenour. These amounts shall be entered as judgments respectively and judgment interest shall accrue until paid in full.

Appellant's App. p. 39.

While Mother does not appear to be opposed to Grandmother having some form of visitation with the Children, she has joined with Father in opposing Grandmother's request for court-mandated visitation. The record reveals, however, that the main conflict appears to be between Father and Grandmother with Mother being a seemingly innocent party caught in the cross-fire. As such, we conclude that the trial court acted within its discretion in awarding Mother the requested attorney's fees.

The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions.

Pyle, J., and Altice, J., concur.