**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 30 2014, 10:07 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JEFFREY E. STRATMAN**
Aurora, Indiana

ATTORNEY FOR APPELLEES:

**R. PATRICK MAGRATH**
Alcorn Goering & Sage, LLP
Madison, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN RE: THE VISITATION OF W.G.R<br>(Minor Child)<br><br>M.W.R., Father,<br><br>    Appellant-Respondent,<br><br>        vs.<br><br>K.G. and D.G., Maternal Grandparents,<br><br>    Appellees-Petitioners. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  No. 78A01-1312-MI-540<br>)<br>)<br>)<br>)<br>) |

APPEAL FROM THE SWITZERLAND CIRCUIT COURT
The Honorable W. Gregory Coy, Judge
Cause No. 78C01-1304-MI-154

**June 30, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

M.R. ("Father") challenges an order for grandparent visitation, pursuant to Indiana Code section 31-17-5-1, et seq. ("the Grandparent Visitation Act"). Father presents the sole issue of whether the order is constitutionally infirm because it is a substantial infringement upon his parental rights, unaccompanied by requisite findings and conclusions. We remand for entry of required findings and conclusions.

**Facts and Procedural History**

On July 3, 2012, W.G-R ("Child") was born out of wedlock to J.G. ("Mother") and Father. Mother, Child, and Child's half-sibling, D.G., lived with Mother's parents ("Grandparents").[1] Father lived with his parents.

When Child was three months old, Father arrived at Grandparents' house where he found Mother drunk and alone with her children. Leaving D.G. behind, Father removed Child from the residence, and initiated a report to the Department of Child Services ("the DCS"). Child and D.G. were determined to be Children in Need of Services ("CHINS"). Ultimately, Grandparents were given custody of D.G. and Father was given custody of Child. The DCS dismissed CHINS proceedings. By the time of the dismissal, Mother had moved in with Father and Child.

On April 23, 2013, while the CHINS wardship was active, Grandparents filed a petition for grandparent visitation with Child. Father, by counsel, filed a response and objection to grandparent visitation.

---

[1] Mother has a third child, T.G., who lives with Grandmother's sister. T.G. visits with D.G. and Grandmother on a regular basis.

After Mother returned from a stay in a rehabilitation facility, she and Father split up. Mother returned to live in Grandparents' residence, but was asked to leave following an alcohol relapse. By the time of the November 13, 2013 hearing, Mother was exercising visitation with Child at Father's and paternal grandparents' home on a weekly basis, and both she and Father opposed Grandparents' request for visitation. Mother testified that her opposition arose from Grandparents' expressed fear of "get[ting] close to [Child]" and not being able to see him, during the time "the DCS case was still going on." (Tr. 24.)

Father testified that grandparent visitation was not in Child's best interests because: "They're on drugs. They bad mouth me and his mother. I wouldn't let my dog go in their house." (Tr. 13.) Father acknowledged that Grandparents had been given custody of D.G. at the conclusion of CHINS proceedings.

After hearing testimony, the trial court made comments regarding the desirability of maintaining extended family relationships of a child and stated that he would grant Grandparents' request for visitation. He asked Father if a two-hour mid-week session would interfere with Child's therapy appointments and Father responded that it would "probably be okay." (Tr. 36.) The court explained that he was imposing upon Father the responsibility of transportation because the parties were "within a few miles" of each other and presumably Father had a "child seat." (Tr. 36.) Finally, the trial court requested that counsel prepare an order to that effect.

On November 25, 2013, the trial court entered a written order providing for grandparent visitation. Therein, the trial court stated that it had taken judicial notice of

3

CHINS and paternity proceedings involving Child; that the Indiana Parenting Time Guidelines expressed a preference for maintaining meaningful relationships with significant adults including grandparents; that the Indiana Supreme Court had expressed a public policy of maintaining family relationships whenever reasonably possible; and that grandparent visitation was in Child's best interests. Father was to provide transportation for visitation to take place at Grandparents' house each Wednesday from 4:00 p.m. to 6:00 p.m. Grandparents were ordered to ensure "that [Child] is physically safe at all times during visitation" and "that there is not illicit drug or alcohol usage or presence" during visitation. (App. 33.)

Father appeals.

## Discussion and Decision

Father contends that the trial court reached a "generic" conclusion that grandparent visitation is in Child's best interests, and failed to enter requisite findings. Appellant's Brief at 16. He also claims that the order is unduly burdensome, in that he is required to make Child available on a weekly basis and provide transportation. Grandparents agree that the trial court order lacked adequate specificity.

The Grandparent Visitation Act – available when a child's parent is deceased, the parents have divorced, or a child is born out of wedlock – is the exclusive basis for a grandparent to seek visitation. In re Visitation of M.L.B., 983 N.E.2d 583, 585 (Ind. 2013). Within its discretion, a trial court may order visitation that is "occasional, temporary visitation that does not substantially infringe on a parent's fundamental right to control the

4

upbringing, education, and religious training of their children." In re K.I., 903 N.E.2d 453, 462 (Ind. 2009). Specific findings of fact and conclusions of law are required, in justification of the infringement upon parental rights. In re M.L.B., 983 N.E.2d at 584. As our Indiana Supreme Court observed:

> A child's relationship with his grandparents is important, and can deserve protection under the Grandparent Visitation Act. But grandparent-visitation orders necessarily impinge, to some degree, on a parent's constitutionally protected rights. An order granting grandparent visitation must therefore include findings that address four well-settled factors for balancing parents' rights and the child's best interests, and must limit the visitation award to an amount that does not substantially infringe on parents' rights to control the upbringing of their children.

Id. The four "well-settled factors" to which the Court referred are those set out in McCune v. Frey, 783 N.E.2d 752, 757-59 (Ind. Ct. App. 2003), and approved and mandated by our Indiana Supreme Court in In re K.I. The factors are:

> (1) a presumption that a fit parent's decision about grandparent visitation is in the child's best interests (thus placing the burden of proof on the petitioning grandparents);
>
> (2) the "special weight" that must therefore be given to a fit parent's decision regarding nonparental visitation (thus establishing a heightened standard of proof by which a grandparent must rebut the presumption);
>
> (3) "some weight" given to whether a parent has agreed to some visitation or denied it entirely (since a denial means the very existence of a child-grandparent relationship is at stake, while the question otherwise is merely how much visitation is appropriate); and
>
> (4) whether the petitioning grandparent has established that visitation is in the child's best interests.

5

In re M.L.B., 983 N.E.2d at 586. Where a trial court's grandparent visitation order is defective in this regard, the appropriate remedy is "a remand for new findings and conclusions based upon the existing record." Id. at 588.

The order which Father challenges does not include findings on the four factors of McCune/K.I. Therefore, we "remand to the trial court for entry of new findings and conclusions revealing its consideration of all four McCune/K.I. factors, without a new hearing." M.L.B., 983 N.E.2d at 588.[2]

Remanded.

KIRSCH, J., and MAY, J., concur.

---

[2] Father suggests that we order the trial court "to limit the scope of the visitation to adequately address Father's concerns about visits in the Grandparents' home." Appellant's Brief at 16. We observe that the trial court has ordered that the visits are subject to Grandparents having no illicit drug or alcohol usage in the home during visits. Presumably, this would include their monitoring of Mother's behavior, should she return, which appears to be of concern to Father. Moreover, the record reveals that Grandparents' home was evaluated during CHINS proceedings and Grandparents were awarded custody of Child's half-brother.

Father also complains his parental rights are unduly infringed upon because he must present Child for weekly visitation of two hours. We observe that, unlike the "extensive visitation" disapproved of in M.L.B., the order in this case involved minimal time and distance. It is also worthy of consideration that the two-hour visitation period is the time in which Child is able to interact and bond with not only his grandparents but his half-sibling(s).

6