## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Erik H. Carter
Carter Legal Services LLC
Noblesville, Indiana

ATTORNEY FOR APPELLEE

Michael R. Auger
Franklin, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In Re the Visitation of:
K.W. and A.W. (Minors),

E.B.,

*Appellant-Petitioner,*

v.

J.W.,

*Appellee-Respondent*

November 23, 2016

Court of Appeals Case No.
41A05-1605-MI-1046

Appeal from the Johnson Superior Court

The Honorable Marla Clark, Judge

Trial Court Cause No.
41D04-1409-MI-164

**Baker, Judge.**

[1] E.B. (Grandmother) appeals the judgment of the trial court, which granted the request of J.W. (Father) that he be allowed to deny Grandmother and J.B. (Grandfather) (collectively, Grandparents) visitation with K.W. (Son) and A.W. (Daughter) (collectively, Children). Grandmother argues the following: (1) the trial court improperly excluded one statement from evidence; (2) the trial court should have ruled on Grandparents' petition to appoint a guardian ad litem before holding hearings; (3) the trial court did not properly consider certain factors regarding their visitation rights; and (4) the trial court's findings were not supported by the record. Finding no error, we affirm.

## Facts

[2] Father and Mother were married and had two children together: Son, born in 2002, and Daughter, born in 2004. Father filed a petition to dissolve the marriage in 2006. Father and Mother contested custody. Grandmother intervened in the divorce, also seeking custody. She alleged that Father had sexually assaulted Daughter, an allegation investigated by the Department of Child Services (DCS) but never substantiated. When Father was granted custody of Children in 2007, both Mother and Grandmother continued, unsuccessfully, to attempt to obtain custody.

[3] Mother passed away in August 2014. A month later, Grandparents sought a grandparent visitation order, which the trial court granted in December 2014 by agreement of the parties. The parties were able to abide by this order, but

Grandparents continued to contact DCS, alleging that Father was neglecting Children. These allegations were also unsubstantiated.

[4] In March 2015, Children were in Grandparents' care but were staying the night at Children's aunt's house. Son sexually assaulted his six-year-old cousin. When the aunt told Father about the incident, Father called DCS and the police, and Son was placed in juvenile detention for two months. Son has been on probation and has received counseling since the incident. Shortly after this incident, Daughter attended a "Good Touch, Bad Touch" instructional program at her school. After the class was over, Daughter disclosed that Son had inappropriately touched her three years earlier. Father has since placed an alarm on Son's bedroom door and instituted a rule that Son cannot be alone with children younger than him. In the opinion of the trial court, "[f]aced with a difficult parenting issue, [Son]'s sexual assault of a relative, Father has acted appropriately and taken reasonable steps to hold [Son] accountable, get him needed treatment, and protect other members of the household." Appellant's App. p. 13. Since the March 2015 incident, Grandparents have requested visitations with Daughter, but not with Son.

[5] Over the course of 2015, Grandparents filed two contempt petitions in response to Father's noncompliance with the visitation order; one was granted, the other withdrawn. The trial court ordered additional visitation to make up for these missed visits.

[6] In December 2015, Daughter was visiting with Grandparents and had a fever. Without administering any over the counter medication or contacting Father, Grandparents took Daughter to the emergency room. When the hospital contacted Father, he refused to give his consent for treatment. Father did, however, take Daughter to the doctor the following day. Since this incident, Grandparents have not had any visitation with Children.

[7] Grandparents' relationship with Father, needless to say, is not a healthy one. Grandmother has called DCS on several occasions. Other members of Mother's side of the family have also called DCS; Father estimates that DCS has visited him at least twice per year, every year, since he obtained custody. None of the allegations against him have been substantiated. The parties' communications are often contentious; on one occasion, Father requested Grandmother to stop harassing him, to which she responded in a text message, "U are just the sperm donor." Appellant's App. p. 12. Grandmother has told Daughter that Father is not a good parent. Grandparents' request that they only want visitation with Daughter but not Son has caused Son to feel unwanted.

[8] On January 14, 2016, Father filed a Petition for Modification of Visitation, alleging that Grandmother's conduct rendered grandparent visitation no longer in the best interests of Children. Five days later, Grandparents filed an Emergency Petition for Guardianship, alleging that Father "is not willing to protect his daughter from ongoing sexual abuse." *Id.* at 26-27. Grandparents also requested that the trial court appoint a guardian ad litem (GAL).

The trial court held a hearing on March 29, 2016, at which Father, Grandmother, and others testified. On April 14, 2016, the trial court granted Father's petition, denied Grandparents' petitions, and ordered Grandmother to pay $1,500 in attorney fees to Father. Grandmother now appeals.[1]

## Discussion and Decision

Grandmother has four arguments on appeal: (1) the trial court improperly excluded one statement from evidence; (2) the trial court erred by not appointing a GAL; (3) the trial court did not consider all appropriate factors in its decision to terminate Grandparents' visitation; and (4) there was insufficient evidence supporting some of the trial court's findings of fact.

## I. Excluded Statement

Grandmother argues that the trial court should not have sustained a hearsay objection, made by Father after Grandmother began a statement with, "I got [Daughter] and then she come up to me and said . . . ." Tr. p. 52. Grandmother argues that the conclusion to this sentence was necessary to decide the case.

Grandmother's argument is unavailing. To reverse a trial court's decision to exclude evidence, there must have been error by the court that affected a party's substantial rights and the party must have made an offer of proof or the

---

[1] Grandparents are divorced. Grandfather lives out of state, has not exercised visitation, and is not participating in this appeal.

evidence must have been clear from the context. *Harman v. State*, 4 N.E.3d 209, 215 (Ind. Ct. App. 2014). Grandmother did not make any offer of proof, nor is the substance of what she was planning to say clear from the context. We simply have no idea what evidence she was seeking to admit and, therefore, we cannot say that her substantial rights were affected.

## II. Appointment of a GAL

[13] Grandmother next argues that the trial court committed reversible error when it did not rule on the GAL petition before ruling in Father's favor.

[14] The appointment of a guardian ad litem is a matter left to the trial court's sound discretion. *Gilbert v. Gilbert*, 7 N.E.2d 316, 323 (Ind. Ct. App. 2014). Here, the trial court made the following conclusion in its order: "The appointment of a Guardian ad Litem is not in the children's best interest. The children have already undergone interviews with trained professionals about the facts at issue here. It would be harmful to them to have to talk to yet another person about these issues." Appellant's App. p. 14.

[15] Although this case certainly includes some very troubling circumstances, the proper authorities have been notified and involved throughout. DCS investigated and eventually closed the case of Son's sexual assault. DCS has also investigated the allegations made against Father and found them to be unsubstantiated. The trial court did not err by finding that it did not need to appoint a GAL to make its decision, and we decline to reverse on this basis.

# III. McCune Factors

Grandmother also argues that the trial court did not address all of the factors required to decide a case involving grandparent visitation.

In Indiana, a child's grandparent may seek visitation rights if the child's parent is deceased. Ind. Code § 31-17-5-1. On the other hand, "natural parents have a fundamental constitutional right to direct their children's upbringing without undue governmental interference, and . . . a child's best interests do not necessarily override that parental right." *In re Visitation of M.L.B.*, 983 N.E.2d 583, 585-86 (Ind. 2013) (citing *Troxel v. Granville*, 530 U.S. 57 (2000)). In striking this balance, our Supreme Court has clarified that a grandparent visitation order "must address" the following factors, known as the *McCune* factors:

> (1) a presumption that a fit parent's decision about grandparent visitation is in the child's best interests (thus placing the *burden* of proof on the petitioning grandparents);
>
> (2) the "special weight" that must therefore be given to a fit parent's decision regarding nonparental visitation (thus establishing a heightened *standard* of proof by which a grandparent must rebut the presumption);
>
> (3) "some weight" given to whether a parent has agreed to some visitation or denied it entirely (since a denial means the very *existence* of a child-grandparent relationship is at stake, while the question otherwise is merely *how much* visitation is appropriate); and

(4) whether the petitioning grandparent has established that visitation is in the child's best interests.

*Id.* at 586 (emphasis original).

[18] Grandmother acknowledges that the trial court made findings tailored to the first two factors: it found that "[a]ll of the evidence supports the conclusion that Father is a fit parent." Appellant's App. p. 13. It also acknowledged the "special weight" given to Father's wish to terminate Grandparents' visitation. *Id.*

[19] Grandmother alleges that trial court did not address the other two factors, but she is mistaken. Regarding whether Father is completely or partially denying Grandparents' access to Children, the trial court acknowledged that Father was denying all visitation but found that "[t]he level of conflict that grandparent visitation introduces into Father's family is extreme and harmful to the children." *Id.* at 13. Moreover, the trial court noted that Father still allows contact with other members of Mother's family. *Id.*

[20] Regarding whether Grandparents have established that visitation is in Children's best interests, the trial court made the following conclusion: "Visitation with Grandfather has not been taking place. Visitation between Grandmother and [Son] is not in [Son]'s best interest. Visitation between Grandmother and [Daughter] is not in [Daughter]'s best interest." *Id.*

[21] In short, the trial court properly addressed all of the *McCune* factors. It (1) found that Father was a fit parent, (2) accorded his decision special weight, (3)

properly noted that Father is seeking to terminate all visitation, but (4) found that this decision was in Children's best interests. The trial court made no error in this regard.

# IV. Evidence Supporting Findings

[22] Finally, Grandmother argues that several findings of the trial court are not supported by evidence. We will set aside findings of fact only if they are "clearly erroneous," deferring to the trial court's superior opportunity to "judgment the credibility of the witnesses." *M.L.B.*, 983 N.E.2d 583, at 585.

[23] Grandmother contends that there is no evidence supporting the trial court's finding that Children are being emotionally scarred by visitation with Grandparents. Appellant's App. p. 13. But at the hearing, Father was specifically asked about the emotional health of Children, and he testified that visitations were "significantly, emotionally harming" Daughter. Tr. p. 32. Grandmother also contends that there is no evidence supporting the trial court's finding that "Father . . . provides a safe, healthy, drug free, and appropriate home . . . ." Appellant's App. p. 13. Again, Father testified that he did so. Tr. p. 35-36. Grandmother also challenges the finding that "[t]he parties have no ability to effectively communicate. There is constant conflict regarding scheduling, exchange times, and locations." Appellant's App. p. 12. But the trial court had evidence that Grandmother referred to Father as a mere "sperm donor," language that is not conducive to effective communication. Tr. p. 24.

In short, Grandmother disagrees with several of the findings of fact made by the trial court and, essentially, asks us to reweigh testimony to make different findings. As the trial court was in a much better position to judge the credibility of witnesses, this is a request that we deny.

The judgment of the trial court is affirmed.

Vaidik, C.J., and Najam, J., concur.