## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 30 2016, 7:57 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Caitlin M. Miller
Hunt, Hassler, Kondras & Miller LLP
Terre Haute, Indiana

ATTORNEY FOR APPELLEES

John A. Kesler II
Kesler & Kesler
Terre Haute, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Allison K. Harper, | December 30, 2016 |
| *Appellant-Respondent,* | Court of Appeals Case No. 84A01-1606-MI-1279 |
| v. | Appeal from the Vigo Superior Court |
| James Likens and Jennifer Likens, | The Honorable David R. Bolk, Judge |
| *Appellees-Petitioners.* | Trial Court Cause No. 84D03-1512-MI-8715 |

**Najam, Judge.**

## Statement of the Case

[1]   Allison K. Harper ("Mother") appeals the trial court's order granting grandparent visitation to James Likens ("Grandfather") and Jennifer Likens

("Grandmother") (collectively, "Grandparents") with Mother's minor daughter B.L. ("Child"). Mother raises four issues for our review, which we consolidate and restate as whether the trial court's judgment is clearly erroneous. We affirm.

## Facts and Procedural History[1]

In 2011, Mother gave birth to Child. Mother and Joshua Likens, Child's father ("Father"), were not married. For the first eighteen months of Child's life, Mother and Child lived with Grandparents, Father's parents. Father lived with them during part of that time but left after he and Mother "broke up." Tr. Vol. 1 at 6. Despite the break-up, Mother and Child continued to stay with Grandparents for a time. During those eighteen months, Father worked and Mother both worked and went to school. Meanwhile, Grandmother, a registered nurse, worked on weekends and, during the weekdays, was a "stay at home grandma" so the Child "didn't have to go to daycare." *Id.*

Mother and Father have a "volatile" history. Tr. Vol. 2 at 11. Father has a criminal history and a history of drug use. At Mother's request, in 2014 the juvenile court ordered Father to submit to a drug screen, which he failed. As a result, the juvenile court modified Father's parenting time to permit only supervised visitation with Child. In light of those circumstances, Mother "felt

---

[1] The Statement of Facts in Mother's Brief is not in accordance with our standard of review on appeal. *See* Ind. Appellate Rule 46(A)(6)(b). Mother also challenges a number of the trial court's findings of fact as not supported by the record. Having reviewed the record, we largely reject those challenges without further discussion. Insofar as the trial court did state facts not supported by the record, we have omitted those facts from our analysis and they have not played a part in our decision.

like it was important for me[,] who had care of [C]hild, . . . to be aware of the situation [with Father] at all times." *Id.*

[4] After Mother and Child moved out of Grandparents' home, Mother continued to permit Grandparents to have regular visitation with Child. As Grandmother later testified, over the ensuing two to two-and-one-half years Mother permitted the Grandparents to exercise two overnights per week with Child. Tr. Vol. 1 at 8-9. Grandmother acknowledged that, during this time, "everything . . . was fine. . . . [W]e were able to see [Child] and enjoy her and . . . [Mother] was gracious with her visitation . . . ." *Id.* at 9. And Grandmother further testified that

> [i]f there was something special going on, if there was a family situation or something special either [Father] . . . or . . . I would ask [Mother] to . . . do something . . . kind of off the record . . . . And . . . almost always [Mother] allowed it. I can't recall a time that she didn't.

*Id.* Those special occasions included trips Grandparents would take with Child that lasted between seven and ten days each. *Id.* at 10.

[5] Near the end of June 2015, Father tested positive for methamphetamine. Father has since been incarcerated and is not projected to be released until June of 2017 at the earliest. Following Father's failed drug test, Mother began supervising Grandparents' visitations with Child. According to a timeline of visits created by Grandmother, between July 2 and October 29, 2015, Mother allowed Grandparents to have supervised visits with Child on eight occasions;

Mother allowed Grandparents to have an unsupervised visit on one occasion; Mother allowed Grandparents to Facetime with Child on nine occasions; on one occasion Grandparents had to cancel a planned visit with Child; and on another occasion Grandparents attempted to contact Child over Facetime as scheduled but there was no answer. Grandmother's timeline also demonstrates open communication between her and Mother regarding scheduling visits.

[6] On October 29, 2015, Mother permitted Grandparents to have an unsupervised visit with Child. During that visit, Grandparents took Child to a park and had professional photographs made of them. Mother did not know that the Grandparents intended to have professional photographs made, although Grandmother had attempted to inform Mother of that plan. On November 1, Mother "sent [an] angry text" to Grandmother "over the pictures and ask[ed] if we took [Child] to our home (which we did not)." Appellant's App. Vol. 2 at 37. Thereafter, Mother did not permit Grandparents to have visitation or communication again with Child for twenty-eight days despite Grandmother requesting "some type of contact" on six different occasions during that timeframe. *Id.*

[7] On November 25, twenty-seven days after the photo shoot, Grandparents filed a petition for Grandparent Visitation with the trial court.[2] The next day, Child

---

[2] On December 18, Grandparents refiled their petition in a court of proper venue.

called Grandparents and visited with them over Facetime.[3] On December 11, Grandparents spoke with Child on the phone, and, on December 20, Grandparents had Christmas with Child for four hours. In January, February, and March of 2016, Mother permitted Grandparents to have one two-hour supervised visit each month. Mother also permitted Grandparents to visit with Child over Facetime "for a long while" on January 27 and again on February 14. *Id.* at 38. But Mother also did not respond to numerous other attempts by Grandparents to communicate with or visit Child.

[8] In March, the trial court held an evidentiary hearing on the Grandparents' petition. Only Grandmother and Mother testified at that hearing. On May 10, the trial court entered findings of fact and conclusions thereon and ordered Mother to permit the Grandparents to visit with Child.

[9] In its order, the court found the following facts:

> 12. The Grandparents have established a strong bond with [C]hild, inasmuch as [C]hild was brought at birth directly to the home of the Grandparents where [C]hild continued to live for the first 18 months of her life.
>
> 13. After [C]hild moved from the Grandparents['] home, at approximately 18 months of age, . . . Grandparents continued to

---

[3] The trial court did not find that Mother knew about the petition the day after the Grandparents had filed it, and there is no evidence in the record to suggest that she had such knowledge.

have regular and consistent, almost daily[,[4]] visitation with [C]hild until July 2015.

14. [F]ather . . . tested positive for methamphetamine in July 2015 and at that time . . . [M]other began restricting the Grandparents' visits with [C]hild and . . . insisted that all visits be supervised by her.

15. [G]randparents were allowed to visit with [C]hild on October 29, 2015[,] unsupervised. However, [M]other was upset because they took photographs of [C]hild . . . .

16. Mother believed that Grandparents lied to her on the October 29, 2015[,] occasion by failing to tell her in advance about the photo shoot.

17. Mother further believes that Grandparents lied to her by telling her that they would not pay their son's child support obligation for [Child] and have done so . . . .

18. Mother further believes Grandparents lied by telling her that they would not hire an attorney for their son in the Paternity or Name Change action[s] and then did so.

19. Following the October 29, 2015[,] visitation Mother did not let Grandparents have visitation until after they filed their Petition for Grandparent Visitation.

---

[4] Mother asserts that the trial court's finding that Grandparents exercised "almost daily" visitation with Child prior to July of 2015 is not supported by the record. But, while the trial court's statement is imprecise, we cannot say it is clearly erroneous because the record does show that Grandparents generally had two overnights with Child per week during that timeframe.

20.  Grandparents did not get to see [C]hild until December 20th, 2015[,] and that visit lasted for approximately four (4) hours.

21.  The only visit during the month of January was a two (2) hour supervised visit . . . .

22.  The only visit during the entire month of February was a two (2) hour supervised visit . . . .

23.  The only visit . . . from March 1st through March 21st . . . was a two hour supervised visit . . . restricted to Dairy Queen.

*Id.* at 12-13.  And the court concluded as follows:

4.  In support of an order granting or denying grandparent visitation, the trial court must set forth findings and conclusions that address:  (1) the presumption that a fit parent acts in his or her child's best interests; (2) the special weight that must be given to a fit parent's decision to deny or limit visitation; (3) whether the grandparent has established that visitation is in the child's best interests; and (4) whether the parent has denied visitation or has simply limited visitation.

5.  The issue as presented by Mother is whether a two (2) hour supervised visit per month with Grandparents satisfies prong four (4) . . . .  Asked another way is "what is the minimum amount of visitation a parent may provide that forecloses the entry of a grandparent visitation order by the Court."

6.  Mother is a fit parent[,] as acknowledged by Grandparents at the hearing.

7. Although Mother has permitted very limited post-filing supervised visitation, the Court finds that no visitation occurred between the time Mother was upset that [G]randparents took [Child] to a park for photographs and the time the Petition for Visitation was filed.

8. No basis exists for visitation to be supervised and [M]other failed to demonstrate any credible basis for this. Mother's complaints about [G]randparents' purported "lying" are pretextual in nature.

9. Undoubtedly a strong bond has been forged between [Child] and [G]randparents; this is not surprising since [G]randmother provided care for [Child] the first eighteen (18) months of her life while [M]other worked.

10. The Court does conclude that it would be in the best interest of [C]hild to have regular and consistent visitation with the Grandparents inasmuch as a strong bond has been established between [C]hild and [G]randparents and there has been meaningful contact between them since birth.

11. The Court concludes that Grandparents have had regular and consistent visitation with [C]hild since birth and there is no reason why that should not continue.

*Id.* at 14 (citation omitted). The court then ordered Mother to permit Grandparents to have "unrestricted visitation" with Child from 6:00 p.m. on the third Friday of each month to 6:00 p.m. the following Saturday; to permit Grandparents to "also have [C]hild on the first (1st) Wednesday of each month from 5:00 p.m. to 8:00 p.m."; and "to allow [G]randparents [F]acetime visits with [C]hild every Wednesday evening at 8:00 p.m. (except when they receive

visitation) . . . for a minimum duration of 10 minutes." *Id.* at 15. This appeal ensued.

## Discussion and Decision

[10] Mother appeals the trial court's order on grandparent visitation. As our supreme court has explained:

> Because the Grandparent Visitation Act requires specific findings of fact and conclusions of law, Ind. Code § 31-17-5-6, we apply the two-tiered Indiana Trial Rule 52 standard of review, *Megyese v. Woods*, 808 N.E.2d 1208, 1213 (Ind. Ct. App. 2004). We first determine whether the evidence supports the findings, and then whether the findings support the judgment, *In re K.I.*, 903 N.E.2d 453, 457 (Ind. 2009). We set aside findings of fact only if they are "clearly erroneous," deferring to the trial court's superior opportunity "to judge the credibility of the witnesses." *K.I.*, 903 N.E.2d at 457, quoting T.R. 52(A). In turn, "[a] judgment is clearly erroneous when . . . the findings fail to support the judgment," or "when the trial court applies the wrong legal standard to properly found facts." *K.I.*, 903 N.E.2d at 457, citing *Fraley v. Minger*, 829 N.E.2d 476, 482 (Ind. 2005).

*K.J.R. v. M.A.B. (In re M.L.B.)*, 983 N.E.2d 583, 585 (Ind. 2013).

[11] Grandparent visitation must be balanced with the fact that the "natural parents have a fundamental constitutional right to direct their children's upbringing without undue governmental interference," and "a child's best interests do not necessarily override that parental right." *Id.* at 586. To protect this fundamental right, our supreme court has mandated that a trial court's order on grandparent visitation must address the following four factors:

(1) a presumption that a fit parent's decision about grandparent visitation is in the child's best interests (thus placing the burden of proof on the petitioning grandparents);

(2) the "special weight" that must therefore be given to a fit parent's decision regarding nonparental visitation (thus establishing a heightened standard of proof by which a grandparent must rebut the presumption);

(3) "some weight" given to whether a parent has agreed to some visitation or denied it entirely (since a denial means the very existence of a child-grandparent relationship is at stake, while the question otherwise is merely how much visitation is appropriate); and

(4) whether the petitioning grandparent has established that visitation is in the child's best interests.

*Id.* Moreover, "the Grandparent Visitation Act contemplates only occasional, temporary visitation that does not substantially infringe on a parent's fundamental right" to direct her child's upbringing. *Id.* at 588.

[12]   Here, there is no question that the trial court found Mother to be a fit parent and that that finding is supported by the record. The trial court also found that Mother had permitted Grandparents to exercise extensive visitation with Child prior to July 2015 but that that visitation had decreased between July and October 29, 2015, and then it had further decreased from that date through the court's order. Those findings also are supported by the record. And the court found that Grandparents had established that visitation with Child was in Child's best interests. Again, the court's finding is supported by the record.

[13]     On appeal, Mother asserts that the trial court did not give her the presumptions and weight to which she was entitled as a fit parent who had not altogether denied Grandparents visitation. But we conclude that Mother has not met her burden on appeal to demonstrate that the trial court's judgment is clearly erroneous. Aside from expressly considering Mother's fitness, her history of permitting visitation, and Child's best interests, the court also found that Mother had no "credible basis" for her July 2015 decision to begin reducing Grandparents' visitation with Child and that her stated reasons were "pretextual in nature." Appellant's App. Vol. 2 at 14. The court further suggested that the limited visits Mother did permit after Grandparents had filed their petition were merely attempts to provide the "minimum amount of visitation" necessary to "foreclose[] the entry of a grandparent visitation order . . . ." *Id.* The court's findings demonstrate that, absent a court order, Grandparents' ability to visit Child was in fact at stake despite the limited amount of visitation Mother had permitted.

[14]     In other words, the trial court, acting as a fact finder, discredited Mother and credited Grandmother. Once the court had assessed the credibility of the witnesses, the court at least implicitly concluded that Grandparents had overcome the presumptions to which Mother was entitled. Mother's arguments on appeal that the court did not give her the weight to which she was entitled are really requests for this court to credit her testimony and evidence over the testimony and evidence credited by the trial court, which we will not do. Further, the authority on which Mother relies on appeal is plainly inapposite, as

none of the cases she relies on involves a trial court judgment in which the court properly considered the four required factors.

[15] Mother also argues that the visitation ordered by the trial court is "a substantial infringement of her rights as a parent." Appellant's Br. at 25. We cannot agree. The court ordered twelve overnights and twelve additional three-hour visits per year. The court also ordered about three Facetime visits per month. The court's visitation order is substantially less onerous than the two-overnight-visits-per-week average that Mother had permitted Grandparents prior to July 2015. *See In re M.L.B.*, 983 N.E.2d at 587. And the visitation ordered here is far less onerous than grandparent visitation schedules that the Indiana Supreme Court has approved. *See, e.g.*, *R.W. v. M.D. (In re L-A.D.W.)*, 38 N.E.3d 993, 996 n.4 (Ind. 2015); *see also id.* at 1002 (Rush, C.J., concurring in result) ("the trial court's award of 24 overnights per year, plus short weekly visits and for a few special occasions, does not unduly infringe on Father's parental rights under these circumstances."). In light of the circumstances of Grandparents' relationship with Child, the court's ordered visitation was well within the trial court's discretion. *See id.* at 998-1001. Accordingly, we affirm the trial court's judgment.

[16] Affirmed.

Bailey, J., and May, J., concur.