

FILED

Aug 15 2019, 8:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

George T. Catanzarite
Stipp Law, LLC
South Bend, Indiana

ATTORNEY FOR APPELLEE

Mark F. James
Anderson, Agostino & Keller, P.C.
South Bend, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Allison Campbell n/k/a Allison
Lanthier and Kyle Lanthier,

*Appellants-Respondents,*

v.

Tara Eary,

*Appellee-Petitioner.*

August 15, 2019

Court of Appeals Case No.
19A-MI-6

Appeal from the St. Joseph Circuit
Court

The Honorable John E. Broden,
Judge

Trial Court Cause No.
71C01-1112-MI-225

**Najam, Judge.**

## Statement of the Case

[1] The issue in this appeal is whether a grandparent visitation order over two children born out of wedlock survives after the children have been legitimized by the marriage of the children's biological parents. We hold that it does not. Accordingly, we reverse the trial court's judgment and remand with instructions.

# Facts and Procedural History

[2] Allison Lanthier ("Mother") gave birth to R.L. in June of 2008 and to L.L. in September of 2010. Kyle Lanthier ("Father") is the biological father of both children, but Mother and Father were not married at the time of either child's birth. Father did not file a paternity affidavit, but Father's name appears on each child's birth certificate.

[3] In December of 2011, Tara Eary, Mother's mother ("Grandmother"), petitioned the trial court for an order of grandparent visitation over the children pursuant to Indiana's Grandparent Visitation Act, Indiana Code Sections 31-17-5-0.2 to -10 (2019) ("the Act"). In particular, she requested visitation under Indiana Code Section 31-17-5-1(a)(3) on the ground that the children were born out of wedlock. The trial court granted Grandmother's request and, in its order, established a visitation schedule ("the visitation order").

[4] In September of 2013, Mother and Father married. Thereafter, Father moved to intervene in Grandmother's visitation action, which the trial court granted, and Mother and Father jointly moved to "dismiss" the visitation order on the ground that their marriage had legitimized the children and that, as a matter of law, the visitation order did not survive the marriage. Appellants' App. Vol. 2 at 14-15. The trial court disagreed and denied Mother and Father's joint motion to dismiss. The court then certified its order for interlocutory appeal, which we accepted.

## Discussion and Decision

Mother and Father (hereinafter, "the Parents") appeal the trial court's denial of their joint motion to dismiss. They assert that the Act does not provide for the survival of the visitation order after the Parents have legitimized the children by their marriage. The Parents' argument on appeal turns entirely on statutory construction, which we undertake *de novo*. *E.g.*, *State v. Reinhart*, 112 N.E.3d 705, 710 (Ind. 2018).

"Historically, grandparents had no special common-law right to have visitation with a grandchild." *K.J.R. v. M.A.B. (In re Visitation of M.L.B.)*, 983 N.E.2d 583, 585 (Ind. 2013). However, "by enacting the Grandparent Visitation Act, our General Assembly has recognized that a child's best interest is often served by developing and maintaining contact with his or her grandparents." *McCune v. Frey*, 783 N.E.2d 742, 755 (Ind. Ct. App. 2003) (quotation marks omitted). The Act thus seeks "to balance two competing interests: the rights of parents to raise their children as they see fit and the rights of grandparents to participate in the lives of their grandchildren." *Id.*

The Act is in derogation of the common law and is "the exclusive basis for a grandparent to seek visitation." *In re Visitation of M.L.B.*, 983 N.E.2d at 585. As such, it "must be strictly construed." *J.C. v. J.B. (In re Guardianship of A.J.A.)*, 991 N.E.2d 110, 113 (Ind. 2017) (discussing *B.M. v. J.J.P. (In re Visitation of C.R.P.)*, 909 N.E.2d 1026, 1028 (Ind. Ct. App. 2009), *trans. denied*) (quotation marks omitted). The Act "contemplates only occasional, temporary visitation

that does not substantially infringe on a parent's fundamental right to control the upbringing, education, and religious training of their [sic] children." *In re Visitation of M.L.B.*, 983 N.E.2d at 586 (quotation marks omitted).

[8] The Act does not speak to whether existing grandparent visitation orders survive the subsequent legitimation by marriage of a child born out of wedlock. We thus begin our review of the Act as relevant here by first recognizing that Grandmother had lawfully obtained a visitation order under Indiana Code Section 31-17-5-1(a)(3), which permits a child's grandparent to seek visitation rights if "the child was born out of wedlock."

[9] With a lawful order on that basis in place, the Act expressly contemplates two, and only two, circumstances in which such an order "survives" the subsequent assumption of a parental role over a child who is the subject of such a visitation order. First, Indiana Code Section 31-17-5-8(b) provides that, when a child is born out of wedlock, "[v]isitation rights provided for in section 1 . . . survive the establishment of paternity of a child by a court proceeding other than an adoption proceeding." Second, Indiana Code Section 31-17-5-9 provides that visitation rights "survive the adoption of the child" by "[a] stepparent" or by "[a] person who is biologically related to the child as: (A) a grandparent; (B) a sibling; (C) an aunt; (D) an uncle; (E) a niece; or (F) a nephew."

[10] The Act expressly addresses those two circumstances in which a grandparent visitation order over a child born out of wedlock survives, which implies that such an order does not survive under other circumstances. As our Supreme

Court has explained, "[u]nder the doctrine of *expressio unius est exclusio alterius*, when certain items or words are specified or enumerated in a statute then, by implication, other items or words not so specified or enumerated are excluded." *A.A. v. Eskenazi Health/Midtown CMHC*, 97 N.E.3d 606, 614 (Ind. 2018) (alteration and quotation marks omitted). Here, the Act does not include the subsequent marriage of a child's natural parents as a circumstance in which an existing grandparent visitation order survives. Thus, we conclude that a grandparent visitation order does not survive the subsequent marriage of the natural parents of a child born out of wedlock.

[11] Our interpretation is consistent with our legislature's intent underlying the Act. This is especially clear from the language of Indiana Code Section 31-17-5-8(b). Again, the statute provides that a grandparent visitation order that is entered over a child born out of wedlock survives the "establishment of paternity of a child *by a court proceeding*." I.C. § 31-17-5-8(b) (emphasis added). The phrase "by a court proceeding" necessarily excludes the legitimation of a child by his or her parents' subsequent marriage. A marriage is not a court proceeding, even if it occurs at a courthouse or is performed by a judicial officer.[1] Thus, again, a strict construction of Indiana Code Section 31-17-5-8(b) indicates that an existing grandparent visitation order does not survive after the parents have legitimized their child by their subsequent marriage.

---

[1] A civil court proceeding, by contrast, "is commenced by filing with the court a complaint or such equivalent pleading or document as may be specified by statute," Ind. Trial Rule 3, which results in a case number being assigned to the proceeding in accordance with Indiana Administrative Rule 8.

[12] Further, the circumstances in which the Act provides that a grandparent visitation order survives a subsequent adoption are not equivalent to the legitimation of a child by the subsequent marriage of the child's natural parents. A fit biological parent holds a privileged, and constitutionally protected, place with respect to his or her child. *See, e.g.*, *J.I. v. J.H. (In re Paternity of K.I.)*, 903 N.E.2d 453, 460-61 (Ind. 2009). Indiana Code Section 31-17-5-9 speaks to the survival of a grandparent visitation order following the adoption of the child by a stepparent or a biologically related nonparent. Given the text of the statute, we decline to analogize or equate those persons with married and fit biological parents, who enjoy unique constitutional rights vis-à-vis their children.

[13] In sum, the Act is in derogation of the common law and must be strictly construed. Instead, Grandmother's argument on appeal asks this Court to read words into the Act that are not there. We will not read the Act to say something it plainly does not say, and we will not disregard the words actually chosen by our General Assembly to strike the balance between allowing for grandparent visitation while also protecting a fit biological parent's rights over his or her children. We hold that the plain language of the Act does not provide for the survival of an existing grandparent visitation order when the biological parents legitimize their children by their subsequent marriage. As such, we reverse the trial court's judgment and remand with instructions to vacate the visitation order.

[14] Reversed and remanded with instructions.

Bailey, J., and May, J., concur.